UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| LIONEL WILLIAMS | ) | Case No. 13cv2676-LAB (DHB) |
| Petitioner, | ) | |
| | ) | **REPORT AND** |
| | ) | **RECOMMENDATION OF** |
| v. | ) | **UNITED STATES MAGISTRATE** |
| | ) | **JUDGE REGARDING PETITION** |
| DAVID LONG, | ) | **FOR WRIT OF HABEAS** |
| | ) | **CORPUS** |
| Respondent. | ) | |
| | ) | |

On August 9, 2013, Petitioner Lionel Williams ("Petitioner"), a state prisoner proceeding *pro se* filed a Petition for Writ of Habeas Corpus. (ECF No. 1.) Petitioner seeks relief from his August 5, 2010 conviction, and his one-hundred years to life, plus twenty-one year sentence in San Diego County Superior Court Case No. SCD 217294 for four counts of robbery, two counts of attempted robbery, and using a deadly or dangerous weapon during the commission of five of those six counts. Petitioner alleges four grounds for relief: (1) the trial court failed to adequately inquire and evaluate the prosecutor's reasons for dismissing two prospective African-American jurors from the jury panel; (2) there was insufficient evidence to corroborate the accomplice's testimony; (3) the denial of petitioner's motion to sever deprived Petitioner of a fair trial; and (4) the trial court erred in admitting an unduly suggestive out-of-court identification. Respondent filed an Answer opposing any habeas

relief. (ECF No. 13.) Petitioner has not filed a Traverse, and the time for doing so has now expired.[1] The Court has reviewed the parties' pleadings, the record, and controlling law, and for the reasons discussed below, hereby **RECOMMENDS** that the Petition be **DENIED**.

# I. BACKGROUND

## A.     Factual Background

The following facts are taken from the unpublished California Court of Appeal Opinion in *People v. Lionel Williams*, Case No. D058809 (Cal. Ct. App. Aug. 3, 2012). (Lodgment No. 5.) The Court presumes these factual determinations are correct pursuant to 28 U.S.C.A. §2254(e)(1).  *See Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (finding factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary).

*2007 Incidents*

In May 2007, Williams was staying with his friend, Rodrigo Gaerlan, Sr., when he met Ambroso Penner. Penner had recently obtained a blue and white Ford Bronco with a licence plate identification of "EMI★CAT." Williams asked Penner to drive with him to commit robberies. Penner initially refused, but eventually agreed on June 2, 2007.

That same evening, Penner picked Williams up and the two men went to a gas station where Williams paid to put gas in the Bronco. Williams then directed Penner to drive to La Jolla. After arriving in La Jolla, Williams had Penner park and wait for his return. Williams was wearing glasses and dressed in dark clothing, including a beanie and "hoodie."

Around 10:45 p.m., Stanley Seidle was walking around his neighborhood in La Jolla when he heard a cracking sound in the bushes. An African-American man wearing a beanie and tortoise shell glasses then approached Seidle and grabbed him by his coat. The man asked Seidle, "Where is the wallet? Where is the wallet?" Seidle explained that he did not have a wallet and dropped his keys to demonstrate that he was not holding anything. The man then asked for the wallet again and pushed a gun against Seidle's chest. As Seidle repeated that he did not have anything, the man patted him down. The man then picked up Seidle's keys, threw them into the canyon next to the street, and then walked away.

Around 11:00 p.m., Thomas and Quynh-Nga Bui Gredig were walking to their car after leaving a friend's party in La Jolla. An African-American man wearing heavy clothing and a hood or a hat approached the couple, pointed a

---

[1]Petitioner's Traverse was due June 18, 2014. (*See* ECF No. 24.)

gun at Thomas and said "Give me your wallet." After Thomas gave the man his wallet, the man moved toward Quynh-Nga. At that point, Quynh-Nga threw her purse into the street. The man then told the couple to run the other way. As the couple ran away, Quynh-Nga saw the man pick up her purse and the couple saw a white truck jump the median in the road.

After the man left, the Gredigs returned to the area and found a beanie on the curb. DNA was later recovered from that beanie and an analysis showed Williams was a possible major contributor of the DNA and Penner was excluded as a contributor.

Penner testified that when Williams returned to his vehicle, Williams was missing his beanie and breathing hard. Penner was going the wrong way, so he made a U-turn over the center median and headed to the freeway. Williams mentioned something about throwing someone's keys and had a purse, wallet and cell phone with him. While they were driving, Williams looked through the items and then tossed them out of the window. A jogger later found some of Quynh-Nga's property and the Gredigs recovered it from an exit off of the freeway.

When Penner and Williams were on the freeway, Williams stated that he did not get enough and convinced Penner to go to another location. Williams instructed Penner to follow a car into a residential area. As the car they were following slowed down, Penner passed it and parked in a location where they would not be seen. Williams got out of the vehicle and disappeared from Penner's sight.

Between midnight and 1:00 a.m. on June 3, 2007, Lydell Heard and his girlfriend, Jessica Vasquez, were driving home from Jack in the Box restaurant when they noticed a Ford Bronco with a license plate that has a star in the middle and ended with "CAT." The Bronco was initially in front of Heard and Vasquez, but then got behind them. When Vasquez parked across from her house, the Bronco slowed down and then continued down the street.

As Vasquez and Heard gathered things from their car, an African-American man with a gun approached them and demanded their wallets. The man was wearing glasses and a dark jacket with a hood over his head. Vasquez gave the man her purse and Heard gave the man his wallet. After Vasquez and Heard got out of their car, the man instructed then to walk down the hill. The couple went down to a neighbor's house and hid behind some hedges. At that point, they saw the same Bronco they had seen earlier come down the hill.

Penner testified when Williams returned to his car, Williams had a purse and a bag of fast food with him. Penner drove away from the scene and headed to pick up his cousin, Rodrigo Gaerlan, Jr. (R.J.), from a party. Penner picked R.J. up and dropped both R.J. and Williams off at Gaerlan, Sr.'s home.

Penner was arrested on June 4, 2007, while driving the Bronco. He later admitted that he and Williams were involved in the robberies. Penner pleaded guilty to four counts of robbery and entered into a cooperation agreement with the prosecution.

Officer's searched Williams's residence on June 12, 2007. They found multiple pairs of gloves, dark colored "hoodies," dark jeans, and multiple beanies. They also found tortoise shell prescription glasses. In Penner's Bronco, officers found a cell phone containing Williams's phone number and

reflecting a call to that number on June 2, 2007.

*2008 Incident*

On a night in November 2008, Julie Leyden was returning to her home in Rancho Peñasquitos when she heard a noise behind her as she stood at her front door. When she turned around, Leyden saw a man crouched down wearing a dark hooded sweatshirt with stitching around it. The man grabbed Leyden's handbag, which got tangled in her shawl. When the man could not get the handbag free, he pulled Leyden to the ground and dragged her down the sidewalk. Leyden's purse opened and its contents spilled out. Leyden screamed and the man took off running. Leyden called 911.

Officer Dave Dunhoff responded to the call and headed north of Leyden's home. He saw a vehicle speeding away from the area and conducted a traffic stop. Williams was driving the vehicle, sweating profusely, and wearing clothing similar to the reported robbery suspect. Williams was nervous and told officer Dunhoff that he had been sleeping in his car. Williams later changed his story and said he pulled over because he was feeling sick. Officer Dunhoff searched Williams's vehicle and found flashlights, screwdrivers, and a knit cap and gloves under the driver's seat.

Officer Jose Oliveras transported Leyden to the location where other officers had detained Williams in order to conduct a curbside identification. Officer Dunhoff presented Williams with the hood of Williams's sweatshirt up and down. Leyden responded by stating "That's him. Oh, yeah. I remember the white trimming on the sweat{shirt}. I'm sure that's him."

(Lodgment No. 5 at 2-6.)

## B.   Procedural Background

On June 5, 2009, an information was filed in the San Diego Superior Court against Petitioner in case number SCD217394, charging him with four counts of robbery pursuant to California Penal Code §§ 211, two counts of attempted robbery pursuant to California Penal Code §§ 664, and the use of a deadly and dangerous weapon in the commission of counts 1 through 5 pursuant to California Penal Code §§ 12022(b)(1). (Lodgment No. 1 at 16.) On August 10, 2010, a jury found Petitioner guilty on all counts. (Lodgment No. 1 at 310-315.) On December 15, 2010, Petitioner was sentenced to an indeterminate term of one-hundred years to life, plus a determinate term of twenty-one years. (Lodgment No. 1 at 418.)

On July 29, 2011, Petitioner filed a direct appeal in the California Court of Appeal. (Lodgment No. 3.) In his appeal, Petitioner raised four arguments. First, Petitioner argued that the trial court failed to adequately inquire and evaluate the prosecutor's reasons for dismissing two prospective African-American jurors from the jury panel. (Lodgment No.

3 at 30.)  Second, Petitioner argued his Fourteenth Amendment rights and Article 1 Section 15 of the State Constitution had been violated because evidence corroborating the accomplice's testimony insufficiently connected Petitioner to the charged offenses. (Lodgment No. 3 at 47.)  Third, Petitioner argued his Fifth Amendment right to a fair trial was violated by the denial of his motion to sever.  (Lodgment No. 3 at 65.)  Fourth, Petitioner argued his Fifth Amendment rights were violated through an unduly suggestive field show-up.  (Lodgment No. 3 at 75.)  On August 3, 2012, the California Court of Appeal affirmed the judgement of the trial court.  (Lodgment No. 5.)

On August 14, 2012, Petitioner filed a Petition for Review in the California Supreme Court.  (Lodgment No. 6.)  There, Petitioner raised the same four issues.  (Lodgment No. 6 at 2.)  On October 10, 2012, the California Supreme Court denied review without comment. (Lodgment No. 7.)

On August 9, 2013, Petitioner filed the instant petition for Writ of Habeas Corpus in the Central District of California.  (ECF No. 1.)  On November 6, 2013, the case was transferred to the Southern District of California.  (ECF No. 5.)

On January 16, 2014, Respondent filed an Answer.  (ECF No. 13.)  On February 14, 2014, the Court issued an order continuing Petitioner's Traverse deadline to March 7, 2014. (ECF No. 15.)  Thereafter, the Court granted Petitioner four extensions of time to file a Traverse.  (*See* ECF Nos. 18, 21, 24.)  To date, Petitioner has not filed a Traverse.

## II. DISCUSSION

### A.    Legal Standard

A federal court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") controls review of this Petition.  *See Lindh v. Murphy*, 521 U.S. 320 (1997).  Under AEDPA, a habeas petition will not be granted with respect to any claim adjudicated on the merits by the state court unless that adjudication: (1) resulted in a decision that was contrary to, or involved an

unreasonable application of clearly established federal law; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding.  28 U.S.C. § 2254(d)(1) and (2); *Early v. Packer*, 537 U.S. 3, 8 (2002).  In deciding a state prisoner's habeas petition, a federal court is not called upon to decide whether it agrees with the state court's determination; rather, the court applies an extraordinarily deferential review, inquiring only whether the state court's decision was objectively unreasonable. *Yarborough v. Gentry*, 540 U.S. 1, 4 (2003); *Medina v. Hornung*, 386 F.3d 872, 877 (9th Cir. 2004).

A federal habeas court may grant relief under the "contrary to" clause if the state court applied a rule different from the governing law set forth in United States Supreme Court cases, or if it decided a case differently than the Supreme Court on a set of materially indistinguishable facts. *Bell v. Cone*, 535 U.S. 685, 694 (2002).  A federal court may grant relief under the "unreasonable application" clause if the state court correctly identified the governing legal principle from Supreme Court decisions, but unreasonably applied those decisions to the facts of a particular case. *Id.*  Additionally, the "unreasonable application" clause requires that the state court decision be more than incorrect or erroneous; to warrant habeas relief, the state court's application of clearly established federal law must be "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003).

"Clearly established federal law" means the law as determined by the United States Supreme Court.  28 U.S.C. § 2254(d)(1).  Circuit precedent may be pertinent to the extent it illuminates the meaning and application of Supreme Court precedent, but "[o]nly Supreme Court precedents are binding on state courts under AEDPA." *Campbell v. Rice*, 408 F.3d 1166, 1170 (9th Cir. 2005).  "[W]hen a Supreme Court decision does not 'squarely address[] the issue . . . it cannot be said, under AEDPA, there is 'clearly established' Supreme Court precedent addressing the issue," and the federal court "must defer to the state court's decision." *Moses v. Payne*, 555 F.3d 742, 754 (9th Cir. 2009). S*ee also Carey v. Musladin*, 549 U.S. 70, 77 (2006) (the lack of holdings from the Supreme Court on the issue presented precludes relief under 28 U.S.C. § 2254(d)(1)).

In applying 28 U.S.C. § 2254(d)(2), federal habeas courts must defer to reasonable factual determinations made by the state courts, to which a statutory presumption of correctness attaches.  28 U.S.C. § 2254(e)(1); *see Schriro v. Landrigan*, 550 U.S. 465, 473-74 (2007).  To determine whether habeas relief is available under § 2254(d), the Court "looks through" to the last reasoned state court decision as the basis for its analysis.  *Ylst v. Nunnemaker*, 501 U.S. 797, 801-8-3 (1991).  If the dispositive state court order does not "furnish a basis for its reasoning," federal habeas courts must conduct an independent review of the record to determine whether the state court's decision is contrary to, or an unreasonable application of, clearly established Supreme Court law.  *See Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000), *overruled on other grounds by Andrade*, 538 U.S. at 75-76; *accord Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003).

## B.    Claim One: Improper Use of Peremptory Challenges

In ground one, Petitioner argues his constitutional rights were violated when the prosecutor used peremptory challenges to exclude two female African-American jurors on the basis of race.  Petitioner claims that as a result of these exclusions, he was denied a jury drawn from a representative cross-section of the community.  (ECF No. 1 at 27-38.)  Respondent argues that the state appellate court's rejection of this claim was reasonable and thus, the Court must deny Petitioner's claim for relief.  (ECF No. 13-2 at 11-16.)

Petitioner presented this claim to the California Supreme Court.  (Lodgment No. 6 at 7-18.)  It was denied without comment.  (Lodgment No. 7.)  The Court will therefore look through the silent denial to the last reasoned decision, which is the Court of Appeal's August 3, 2012 opinion denying Petitioner's direct appeal.  *Ylst*, 501 U.S. at 804.  The Court of Appeal found the prosecutor's use of peremptory challenges were proper:

> In reviewing a trial court's determination whether a prosecutor's neutral explanations for exercising peremptory challenges are genuine and not a pretext for racial or other group discrimination, we apply the substantial evidence standard of review.  (*People v. Williams, supra,* 16 Cal.4th at p.666; *Alvarez, supra,* 14 Cal.4th at pp. 196-198.)  In doing so, we give "great deference to the trial court's ability to distinguish bona fide reasons for the exercise from sham excuses."  (*People v. Hayes* (1999) 21 Cal.4th 1211, 1284-1285.)  If the trial court "makes a sincere and reasoned effort to evaluate the nondiscriminatory justifications offered, its conclusions are entitled to [such] deference on appeal. [Citation.]"  (*People v. Burgener* (2003) 29 Cal.4th 833, 864.)  "'In such

circumstances, [we] will not reassess good faith by conducting [our] own comparative juror analysis. Such an approach would undermine the trial court's credibility determinations and would discount "'the variety of [subjective] factors and considerations,'" including "prospective jurors' body language or manner of answering questions," which legitimately inform a trial lawyer's decision to exercise peremptory challenges." [Citation.]" (*People v. Jackson* (1996) 13 Cal.4th 1164, 1197.) Moreover, the absence of express findings by the trial court does not show it did not satisfy its obligation to make a "sincere and reasoned" effort to evaluate the nondiscriminatory reasons offered. (*Id.* at pp. 1197-1197.) "Wheeler does not require the trial court to conduct further inquiry into the prosecutor's race-neutral explanations if...it is satisfied from its observations that any or all of them are proper. [Citation.]" (*Id.* at p. 1198.)

Here, there is substantial evidence to support the trial court's finding that the prosecutor excused Prospective Jurors Nos. 5 and 6 for race-neutral reasons. In regard to No. 5, the prosecutor expressed concern that she was a nurse because, in his experience, people in that profession require "more proof than proof beyond a reasonable doubt in terms of lay people." Courts have found similar reasons to be race-neutral. (See, e.g., *People v. Barber, supra,* 200 Cal.App.3d at p.394 [a juror was challenged because of a profession based on the prosecutor's belief that kindergarten teachers are often liberal and not prosecution oriented]; *People v. Granillo* (1987) 197 Cal.App.3d 110, 120, fn. 2 ["[m]any prosecutors believe various professional people are unacceptable because they may be too demanding or they look for certainty."].) In addition to Prospective Juror No. 5's profession, the prosecutor in this case also stated that he preferred another juror because that juror, as opposed to No. 5, was the victim of a robbery. The changing composition of a jury is a legitimate reason to exercise a peremptory challenge. (*People v. Reynoso* (2003) 31 Cal.4th 903, 918-919.)

With respect to Prospective Juror No. 6, the prosecutor offered multiple reasons for challenging her, including her dismissive attitude toward a robbery incident involving her sister-in law, her demeanor and manner of answering questions, and that she worked with inmates on a daily basis. A prosecutor's perception of a prospective juror's "body language or manner of answering questions" may constitute a sufficient nondiscriminatory reason for a peremptory challenge. (*Arias, supra,* 13 Cal.4th at p.136.) The record supports the prosecutor's claim that No. 6 interrupted the court while being questioned and that she was somewhat dismissive of her sister-in-law's robbery. At one point, No. 6 even stated that she thought that if she spoke fast, the court would not think to stop her. Further, the prosecutor could legitimately be concerned about No. 6's daily contact with inmates because that could be viewed as a factor potentially favoring the defense.

The prosecutor's stated reasons for excusing Prospective Jurors Nos. 5 and 6 were plausible and supported by the record. That being so, the trial court was not required to further inquire into the prosecutions reasons. By personally observing the prosecutor's demeanor in providing his explanations, the trial court presumably weighed the prosecutor's veracity and determined whether his explanations, which were supported by the record, were legitimate, race-neutral reasons for excusing those jurors. The trial court was not required to "cross-examine" the prosecutor to determine the veracity of his explanations. Further, questioning of a reason is only required where the explanation is implausible or suggests bias. (*People v. Silva* (2001) 25 Cal.4th 345, 386; *People v. Hall* (1983) 35 Cal.3d 161, 168-169.) Here, the prosecutor's reasons for exercising his peremptory challenges to Prospective Jurors Nos. 5 and 6

were reasonable and did not suggest bias. Thus we conclude the trial court properly denied William's *Batson/Wheeler* motion.

(Lodgment No. 5 at 10-12.)

A defendant's Fourteenth Amendment right to equal protection under the law is violated when peremptory challenges are used to exclude jurors based solely on their race. *Batson v. Kentucky*, 476 U.S. 79, 86 (1986). The state determines the number of peremptory challenges allowed and defines their purpose and manner of exercise. *Ross v. Oklahoma*, 487 U.S. 81 (1988). In order to establish a prima facie claim of racial discrimination in jury selection under *Batson*, the defendant must show: (1) he is a member of a cognizable racial group, (2) the prosecutor has exercised peremptory challenges to remove from the venire, members of the defendant's racial group, and (3) such facts and any other relevant circumstances that raise an inference that the prosecutor used the peremptory challenges to exclude the veniremen from the petit jury on account of their race. *Batson*, 476 U.S. at 94. If the defendant successfully makes that showing, the burden then shifts to the prosecution to come forward with a race-neutral explanation for challenging the excluded jurors. *Id.* Deference to trial court findings in regards to discriminatory intent often turn on the evaluation of credibility, and whether the race-neutral explanations provided by the prosecutor were believed by the trial court. *Hernandez v. New York*, 500 U.S. 352, 359 (1991).

During the voir dire proceedings, the prosecutor used two peremptory challenges to exclude Prospective Jurors Nos. 5 and 6. (Supp. Lodgment No. 1 at 108, 142.) Both Prospective jurors were African-American females. (Supp. Lodgment No. 1 at 146.) In response to a *Batson* motion raised by Petitioner, the trial court found a prima facie showing of discrimination. (Supp. Lodgment No. 1 at 143.) The prosecutor then offered several race-neutral reasons for excusing the potential jurors. The race-neutral explanations included (1) members of the science field (nurses, scientists, doctors) require more than proof beyond a reasonable doubt, (2) preference for a different juror who was a victim of a robbery, (3) Prospective Juror No. 6 was dismissive of a robbery involving her family member, (4) Prospective Juror No. 6 interrupted the court, and (5) Prospective Juror No. 6 worked with

inmates every day.  (Supp. Lodgment No. 1 at 143-146.)  The trial court considered the prosecutor's explanations and found them credible, noting without being prompted, that the prosecutor passed consistently on two other African-American male prospective jurors. (Supp. Lodgment No. 1 at 146.) Therefore, the trial court denied Petitioner's motion. (Supp. Lodgment No. 1 at 147.)

The trial court followed the appropriate procedure in determining that the prosecutor's use of peremptory challenges on Prospective Jurors Nos. 5 and 6 were not discriminatory. Likewise, the Court of Appeal applied the proper constitutional standard in reviewing Petitioner's *Batson* motion, and the court's conclusion that the trial court did not err was not unreasonable.  Thus, the Court finds the state court's denial of Petitioner's misuse of peremptory challenge claim was not contrary to nor an unreasonable application of clearly established Supreme Court law. *See Williams*, 529 U.S. at 412-13.

Accordingly, the Court RECOMMENDS that Petitioner's claim in ground one be DENIED.

## C.    Claim Two: Improper Accomplice Testimony

In ground two, Petitioner argues that his constitutional rights were violated because there was insufficient evidence to corroborate the accomplice's testimony. (ECF No. 1 at 39-47.) Respondent contends Petitioner's claim does not present a federal question, and was reasonably rejected by the California Court of Appeal.  (ECF No. 13-2 at 16-20.)

Petitioner presented this claim to the California Supreme Court.  (Lodgment No. 6 at 19.) It was denied without comment. (Lodgment No. 7.)  Thus, the Court will look through the silent denial to the appellate court opinion. *Ylst*, 501 U.S. at 804.  The Court of Appeal found there was sufficient evidence to corroborate the accomplice's testimony:

> When reviewing the issue of corroboration of accomplice testimony, a court must eliminate the accomplice's testimony from its consideration, and examine the remaining evidence to determine whether there is evidence connecting the defendant to the crime.  (*People v. Falconer* (1988) 201 Cal.App.3d 1540, 1543.)  "If the sum total of all the evidence (other than the accomplice's testimony), connects the defendant to the commission of the offense the requirements of Penal Code section 1111 are satisfied." (*People v. Manson* (1977) 71 Cal. App.3d 1, 36.)
>
> We apply a highly deferential standard in reviewing the jury's findings

of corroborating evidence. "'"[U]nless a reviewing court determines that the corroborating evidence should not have been admitted or that it could not reasonably *tend* to connect a defendant with the commission of a crime, the finding of the trier of fact on the issue of corroboration may not be disturbed on appeal." [Citation.]' [Citation.]" (*People v. Garcia* (2001) 89 Cal.App.4th 1321, 1329-1330; accord *People v. McDermott* (2002) 28 Cal.4th 946, 986.)

Applying these standards to the case before us, we conclude the jury had a reasonable basis to find the corroborating evidence connected Williams to the robberies. Apart from Penner's testimony, the testimony of the victims and evidence found at the scenes of the robberies and Williams's residence connected Williams to the crimes. Seidle testified that the perpetrator was an African-American man wearing tortoise shell glasses and a beanie. Officers found similar items at Williams residence. The Gredigs found a beanie when they returned to the area where they were robbed. That beanie had Williams's DNA on it. Additionally, Thomas Gredig, Heard and Vasquez all testified that although they were not positive that Williams was the perpetrator, Williams resembled him.

Multiple witnesses also connected Williams to the Bronco that was seen near the scenes of multiple crimes. After they were robbed, the Gredigs saw a white truck jump the median in the road. Heard and Vasquez also saw a Bronco with a license plate ending in "CAT" just before and after they were robbed. R.J. confirmed that Williams was in the Bronco with Penner on the night of the 2007 robberies.

Based on this evidence, Penner's testimony was sufficiently corroborated. The evidence was more than the "slight" corroboration to permit the jury to consider the accomplice's testimony. (*People v. Sanders*, *supra*, 11 Cal.4th at pp. 534-535.) The evidence linked Williams to each of the offenses. "It is sufficient if the corroborating evidence tends to connect the defendant with the commission of the offense, though if it stood alone it would be entitled to little weight." (*People v. Rice* (1983) 29 Cal.App.2d 614, 619; accord, *People v. Miller* (2000) 81 Cal.App.4th 1427, 1442.)

(Lodgment No. 5 at 14-15.)

First, to the extent Petitioner is claiming California state law requiring an accomplice's testimony to be corroborated was improperly applied, the Court finds Petitioner has not raised a cognizable federal claim. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). Federal courts are bound by a state courts' interpretation of state law, and may not revisit state court determinations on state law issues such as the elements and scope of crimes codified under state law. *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) ("federal habeas corpus relief does not lie for errors of state law").

Second, Respondent correctly notes that there is no clearly established federal law

requiring the corroboration of accomplice's testimony. *See Sabari v. United States*, 333 F.2d 1019, 1021 (9th Cir. 1964) ("[T]he uncorroborated testimony of an accomplice, if believed by the jury, is sufficient to support a jury verdict."); *Cummings v. Simmons*, 506 F. 3d 1211, 1237 (10th Cir. 2007) (finding no Supreme Court decisions requiring the testimony of an accomplice-witness to be corroborated); *Harrington v. Nix*, 983 F.2d 872, 874 (8th Cir. 1993) ("[S]tate laws requiring corroboration do not implicate constitutional concerns that can be addressed on habeas review."); *Takacs v. Engle*, 768 F.2d 122, 127 (6th Cir. 1985) (stating the Constitution is silent on accomplice testimony and that "it is not irrational to rely on uncorroborated accomplice testimony"); *Llewellyn v. Stynchcombe*, 609 F.2d 194, 196 (5th Cir. 1980) (state law which requires corroboration of accomplice testimony is not controlling upon collateral review by a federal court). Therefore, the state court's rejection of Petitioner's claim was not contrary to, or an unreasonable application of, clearly established Supreme Court law. *See Carey v. Musladin*, 549 U.S. 70, 77 (2006) (explaining that a state court's decision cannot unreasonably apply clearly established federal law if the United States Supreme Court has not clarified an issue); *Wright v. Van Patten*, 552 U.S. 120, 126 (2008) ("Because our case gives no clear answer to the question presented, let alone one in [the petitioner's] favor, 'it cannot be said that the state court unreasonabl[y] appli[ed] clearly established Federal law.'"); *Brewer v. Hall*, 378 F.3d 952, 955 (9th Cir. 2004) ("if no Supreme Court precedent creates clearly established federal law relating to the legal issue the habeas petitioner raised in state court, the state court's decision cannot be contrary to or an unreasonable application of clearly established federal law.").

Finally, to the extent Petitioner is claiming there was insufficient evidence to support the jury's verdict, this argument unavailing. A state prisoner who alleges the evidence introduced at trial was insufficient to support the findings of the trier of fact states a cognizable federal claim. *Herrera v. Collins*, 506 U.S. 390, 401 (1993). In reviewing an insufficiency of the evidence claim, federal courts must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v.*

*Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).  A reviewing court "faced with a record of historical facts that supports conflicting inferences must presume - even if it does not affirmatively appear in the record - that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Wright v. West*, 505 U.S. 277, 296-97, *citing Jackson*, 443 U.S. at 326.  The court does not re-weight the evidence, nor may the court "make its own subjective determination of guilt or innocence." *Jackson*, 443 U.S. at 319 n. 13.  Credibility determinations are exclusively in the province of the trier of fact. *Id*. at 319, 326.  The *Jackson* standard "gives full play to the responsibility of the trier of fact to fairly resolve conflicts in the testimony, to weight the evidence, and to draw reasonable inferences from the basic facts to ultimate facts." *Id*. at 319.  In order to establish sufficient evidence, the prosecution need not affirmatively "rule out every hypothesis except that of guilt." *Id*. at 326.  Even where evidence is "almost entirely circumstantial and relatively weak," it may be sufficient to support a conviction. *Jones v. Wood*, 207 F.3d 557, 563 (9th Cir. 2000).  In addition, a federal habeas court must apply the *Jackson* standard with an additional layer of deference. *Juan H. V. Allen*, 408 F.3d 1262, 1274 (9th Cir. 2005). Generally, a federal habeas court must ask whether the operative state court decision reflected an unreasonable application of *Jackson* to the facts of the case. *Id*. at 1275.

In reviewing the record in the light most favorable to the prosecution, the Court concludes a rational jury could have found proof beyond a reasonable doubt of Petitioner's guilt. *Jackson*, 443 U.S. at 324.  The victims' physical descriptions of the perpetrator and his clothing were consistent across each of the 2007 incidents.  In addition, items found at Petitioner's home matched the items the victims had described.  Petitioner is an African-American male. (Lodgment No. 4 at 7.)  The first victim, Stanley Seidle, described the perpetrator as an African-American male wearing a beanie and tortoise shell glasses. (Lodgment No. 5 at 2.) The second victims, Thomas and Quynh-Nga Bui Gredig, described the perpetrator as an African-American male wearing a jacket and something on his head. (Lodgment No. 2 at 354, 379-80.)  One of the victims from the third incident, Jessica Vasquez, described the perpetrator as a black male wearing a hooded sweater jacket, some

type of bandana covering his nose, and dark sunglasses.  (Lodgment No. 2 at 550-51).  A search of Petitioner's home uncovered tortoise shell prescription glasses, multiple beanies, dark jeans, dark colored "hoodies," and multiple pairs of gloves.  (Lodgment No. 5 at 5.) Additionally, the victims of the second 2007 incident, Thomas and Quynh-Nga Bui Gredig, provided a description of the perpetrator's vehicle that matched the accomplice's vehicle. Also a beanie with Petitioner's DNA evidence was found near the scene of that crime. (Lodgment No. 5 at 3.)  The victims of the third 2007 incident, Lydell Heard and Jessica Vasquez, provided a partial license plate identification that also matched the accomplice's vehicle. (Lodgment No. 5 at 4.)  Moreover, the testimony provided by the victims was consistent with the testimony provided by the accomplice for all of the 2007 incidents. (Lodgment No. 5 at 2-5.)

Based on the foregoing, there was sufficient evidence from which a rational trier of fact could ascertain Petitioner's guilt beyond a reasonable doubt. *Jackson*, 443 U.S. at 324. Therefore, the Court finds the state court's determination that there was sufficient evidence necessary to corroborate the accomplice's testimony was not contrary to, or an unreasonable application of, clearly established Supreme Court law.

Accordingly, the Court RECOMMENDS that Petitioner's claim in ground two be DENIED.

### D.    Claim Three: Denial of Motion to Sever

In ground three, Petitioner argues that his constitutional rights were violated when the trial court denied his motion to sever: (1) all charges stemming from the 2007 incidents from the charges based on the 2008 incident, and (2) all charges stemming from the robbery of the Gredigs from the other 2007 incidents.  (ECF No. 1 at 48-54.)  Respondent argues the state court reasonably rejected this claim.  (ECF No. 13-2 at 20-22.)

Petitioner presented this claim to the California Supreme Court.  (Lodgment No. 6 at 28.)   It was denied without comment.  (Lodgment No. 7.)  Therefore, the Court looks through the silent denial to the appellate court opinion. *Ylst*, 501 U.S. at 804.  The California Court of Appeal rejected Petitioner's claim, finding that the trial court did not abuse its

discretion in denying Petitioner's motion to sever, and Petitioner was not prejudiced as a result of the decision.  The court stated:

> Prior to trial, Williams moved to sever (1) the charges stemming from the 2007 robberies from the 2008 robbery, and (2) the charges stemming from the robberies of the Gredigs from the remaining 2007 incidents.  Williams argued the 2007 charges should be severed from the 2008 charges because of the potential for spillover effect of evidence from strong charges to weak ones and to minimize the impact of evidence which might inflame the passion of jurors.  He also asserted that judicial economy did not support joining the charges and due process and fair trial considerations warranted the severance.  With respect to the robberies involving the Gredigs, Williams argued they should be severed because jurors would be unable to compartmentalize the DNA evidence found on the beanie recovered near the scene of the Gredigs' robberies from the other charges.
>
> The trial court denied the motion on grounds that all of the charges were of the "same class," the charges stemming from the 2007 incidents were connected together in their commission in that they all occurred in one evening, the 2008 incident involved the same mode and method as the 2007 incidents, evidence was cross-admissible, and joinder was in the interest of judicial economy.
>
> . . .
>
> Penal Code section 954 permits joinder of "two or more different offenses of the same class of crimes or offenses."  Williams concedes that the offenses he was charged with are of the same class.  Thus, the offenses meet the statutory requirement for joinder under Penal Code section 954.
>
> A trial court has discretion to order that properly joined charges be tried separately (Pen. Code, § 954), but there must be a "clear showing of prejudice to establish that the trial court abused its discretion in denying the defendant's severance motion."  (*People v. Mendoza* (2000) 24 Cal.4th 130, 160.)  In assessing a claimed abuse of discretion, we assess the trial court's ruling by considering the record then before the court.  (*People v. Soper* (2009) 45 Cal.4th 759, 774; *People v. Avila* (2006) 38 Cal.4th 491, 575.)
>
> Here, even assuming the evidence was not cross-admissible, Williams has not shown prejudice or an abuse of discretion.  We do not see this case as a case where some of the charges were weaker than others.  To the contrary, there was significant evidence as to each crime (*see ante*, part III) and there is no reason why jurors could not assess the legitimacy and significance of Leyden's identification and the DNA evidence without having that evidence impact their assessment of the other charges.  There is nothing in the record that suggests the jury was confused or improperly considered the evidence.  Further, all of the charges involved similar facts and a similar pattern of conduct.  Thus, it cannot be said that one event was more inflammatory than the other.  Accordingly, the trial court acted well within its discretion in denying William's severance motion.

(Lodgment No. 5 at 18-19.)

Severance and joinder of claims are questions of state procedural law and only become

cognizable on federal habeas review if misjoinder results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial. *See United States v. Lane*, 474 U.S. 438, 446 n. 8 (1986). The Ninth Circuit summarized the test for assessing when misjoinder rises to the level of a due process violation as follows:

> [T]he propriety of a consolidation rests within the sound discretion of the state trial judge. The simultaneous trial of more than one offense must actually render petitioner's state trial fundamentally unfair and hence, violative of due process before relief pursuant to 28 U.S.C. § 2254 would be appropriate.

*Bean v. Calderon*, 163 F.3d 1073, 1084 (9th Cir. 1998); *See also Herring v. Meachum*, 11 F.3d 374, 377 (2d Cir. 1993) ("In considering whether a violation of due process has occurred, the emphasis must be on the word 'actually;' for, viewed clearly, it is only the consequences of joinder, over which the trial judge has much control, and not the joinder itself, which may render the trial 'fundamentally unfair.'"). The burden is on Petitioner to prove unfairness rising to the level of a due process concern. *Park v. California*, 202 F. 3d 1146, 1149 (9th Cir. 2000).

Here, the rule applied by the Court of Appeal in determining whether the trial court abused its discretion in denying the severance motion is compatible with the "fundamental unfairness" inquiry required under federal law. The state court evaluated the prejudice to Petitioner, and recognized factors for determining prejudice such as whether the jury could have compartmentalized the evidence and the presence of any "spillover" effect of evidence from a strong charge to a weak one. Similar factors are applied under federal law. *See Bean*, 163 F.3d at 1084-86.

Further, the Court of Appeal's decision was not unreasonable in light of the evidence presented in the state court proceedings. The record reflects strong evidence supported each individual 2007 incident. The first 2007 incident was the attempted robbery of Stanley Seidle. (Lodgment No. 5 at 2-3.) According to Seidle, the perpetrator was an African-American male wearing a beanie and tortoise shell glasses. (Lodgment No. 5 at 2.) The accomplice testified that Petitioner was wearing glasses, dressed in dark clothing including a beanie and a "hoodie." (Lodgment No. 5 at 2.) The second 2007 incident was the robbery

of Thomas and Qunh-Nga Bui Gredig.  (Lodgment No. 5 at 3.)  The Gredigs testified they saw a white truck jump the median in the road immediately following the robbery, and a beanie with Petitioner's DNA was found near the curb where the white truck was parked during the crime.  (Lodgment No. 5 at 3.)  The accomplice testified that Petitioner returned to his truck missing a beanie.  He also testified that he subsequently made a u-turn over the center median to proceed towards the freeway.  (Lodgment No. 5 at 3.)  The third incident in 2007 was the robbery of Lydell Heard and Jessica Vasquez.  (Lodgment No. 5 at 4.)  Heard and Vasquez provided a partial licence plate identification that matched with the licence plate on the accomplice's Ford Bronco. (Lodgment No. 5 at 4.)  Heard and Vasquez described the perpetrator as wearing glasses with a dark jacket and hood worn over his head.  (Lodgment No. 5 at 4.)  The perpetrator left with Heard's wallet, Vasquez's purse, and a bag of Jack In The Box fast food.  (Lodgment No. 5 at 4.)  According to the accomplice, Petitioner returned to the vehicle with a purse and a bag of fast food.  (Lodgment No. 5 at 4.)

The 2008 incident was also adequately supported by independent evidence.  Although the 2008 incident was not supported by accomplice testimony, the victim positively identified Petitioner in a field show up less than an hour after the crime.  (Lodgment No. 5 at 6.)  Petitioner was stopped minutes after the crime, was sweating profusely, and gave the police conflicting accounts of his reasons for being in the area.  (Lodgment No. 5 at 5-6.)  Petitioner's argument that the 2008 out-of-court identification caused prejudice by "leach[ing] into the jurors' deliberations," is unsupported by the record which provides ample support for Petitioner's guilt on each count.

Therefore, the Court finds the joinder of counts did not render Petitioner's trial fundamentally unfair.  The record supports a finding that the jury was capable of compartmentalizing the evidence and not considering it cumulatively.  Thus, the Court finds the state court's denial of Petitioner's motion to sever is not contrary to, or an unreasonable application of clearly established federal law.

Accordingly, the Court RECOMMENDS that Petitioner's claim in ground three be

1    DENIED.

2    **E.    Claim Four: Unduly Suggestive Field Show-Up**

3    In ground four, Petitioner argues that his constitutional rights were violated when the

4    trial court allowed evidence of a victim's out of court identification to be admitted at trial.

5    (ECF No. 1 at 55-61.)  Respondent contends that the state court's reasonably rejected this

6    claim.  (ECF No. 13-2 at 23-26.)

7    Petitioner presented this claim to the California Supreme Court.  (Lodgment No. 6 at

8    35.) The petition was denied without comment. (Lodgment No. 7.) Therefore, the Court will

9    look through the silent denial to the appellate court opinion.  *Ylst*, 501 U.S. at 804.  The

10   California Court of Appeal upheld the trial court's decision to admit the out of court

11   identification:

12       A pretrial identification procedure violates due process only if it so
13   impermissibly suggestive that it creates a "very substantial likelihood of
     irreparable misidentification." (*People v. Contreras* (1993) 17 Cal.App.4th
14   813, 819 (*Contreras*).  In determining whether the admission of identification
     evidence violated Williams's due process rights, we must consider (1) whether
15   the identification procedure was unnecessary and unduly suggestive, and, if so,
     (2) whether the identification itself was nevertheless reliable under the totality
16   of the circumstances.  (*People v. Cunningham* (2001) 25 Cal.4th 926, 989.)
     Only if the answer to the first question is yes and the answer to the second
17   question is no is the identification constitutionally unreliable. (*People v. Ochoa*
     (1998) 19 Cal.4th 353, 412.)

18       William bears the initial burden of showing that the pretrial identification
19   procedure was unduly suggestive an unnecessary, such that its introduction
     resulted in unfairness that infringed his due process rights. (*People v. Cooks*
20   (1983) 141 Cal.App.3d 224, 305.)    He must show unfairness as a
     "'demonstrable reality,'" rather than mere speculation. (*Contreras, supra,* 17
21   Cal.App.4th at p.819.)

22       Here, there was conflicting evidence regarding the field identification
     procedures.  Leyden testified that she identified Williams after she asked an
23   officer to put Williams's hood partially over his face and have him assume a
     crouching position. However, Officer Dunhoff, who presented Williams at the
24   curbside identification, testified that he presented Williams with his hood up
     and down, but Williams never got into a crouching position.  The trial court
25   ruled that the field identification procedures were not unduly suggestive and
     unnecessary.  In making its ruling, the court noted the conflicting testimony,
26   but concluded that "the more reliable testimony" came from the officers as
     opposed to Leyden regarding the procedure used.

27       Williams has not identified any procedures that rendered the field
28   identification unduly suggestive or unreliable.  As the trial court noted, the
     showup identification procedure utilized in this case was "a procedure that is
     common with virtually every curbside lineup that occurs." Any suggestiveness

that came from the proximity in time of the lineup to the crime was "offset by the reliability of an identification made while the events [were] fresh in the witness's mind." (*In re Carlos M.* (1990) 220 Cal.App.3d 372, 387.)  Further, although the officers may have told Leyden that they had stopped someone that they wanted her to look at, Leyden testified that officers never told her that Williams was the assailant.  Telling a witness that a suspect is in custody is not impermissible in the context of identification procedures. (*Contreras, supra,* 17 Cal.App.4th at p. 820.)  Similarly, in regard to William's hood being put over his head, it is not improper for an officer preparing for a lineup to require a suspect to put back on the clothes the suspect was wearing at the time of the arrest and doing so does not render the identification procedure unduly suggestive. (*People v. Floyd* (1970) 1 Cal.3d 694, 713, disapproved on other grounds in *Wheeler*, *supra*, 22 Cal.3d at p. 287, fn. 36.)  Lastly, we are not persuaded that Williams assumed a crouching position during the identification.  As we noted, there was conflicting evidence in this regard and the trial court found the officers' testimony was more credible than Leyden.  We will not disturb the trial court's credibility finding on appeal.  (See *People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.)

In sum, we conclude Williams failed to satisfy his burden of demonstrating that the field identification procedures were unduly suggestive or unreliable.  Consequently, the trial court did not err in admitting evidence of the identification.

(Lodgment No. 5 at 19-21.)

Due process is violated by a pretrial identification where: (1) the identification procedure is impermissibly suggestive as to give rise to a very substantial likelihood of misidentification; and (2) the identification is not sufficiently reliable to outweigh the corrupting effects of the suggestive procedure. *Van Pilon v. Reed*, 799 F.2d 1332, 1338 (9th Cir. 1986), citing (*Simmons v. United States*, 390 U.S. 377, 384 (1968); *Mason v. Braithwaite*, 432 U.S. 98, 117 (1977)).  If an identification procedure is found to be impermissibly suggestive, it may still survive a due process challenge if the identification is found to be reliable based on the totality of the circumstances. *Neil v. Biggers*, 409 U.S. 188, 199-200 (1972).  A reviewing court may assume suggestiveness and review reliability first. *Van Pilon*, 799 F.2d at 1339.  There are five factors which guide a totality of the circumstances analysis regarding the reliability of an identification: (1) the witness's opportunity to view the culprit at the time of the crime, (2) the witness's degree of attention at the time of the crime, (3) the accuracy of the witness's description of the culprit prior to the identification, (4) the witnesses's level of certainty when identifying the defendant at the confrontation, and (5) the length of time between the crime and the confrontation. *Neil*, 409

U.S. at 199-200.

Here, even assuming the identification was suggestive, the Court finds the identification was sufficiently reliable.  The field show up took place 30 to 45 minutes after the crime, while the details of the perpetrator were still fresh in the victim's mind.  (Lodgment No. 2 at 188.)  The victim did not immediately identify Petitioner.  (Lodgment No. 2 at 205.)  A positive identification was only provided after the victim requested that the officers put the Petitioner's hood over the top half of his face.  (Lodgment No. 2 at 192-193.)  During the crime, the victim was only able to see the lower portion of the perpetrator's face because the remainder of his face was covered by a hooded sweatshirt.  (Lodgment No. 2 at 191-192, 195.)  During the crime, the victim noticed that there was white stitching around the edge of the hood.  (Lodgment No. 2 at 208.)  The victim testified that she was positive Petitioner was the perpetrator because she recognized the clothing the he was wearing, including the white stitching on the sweatshirt, and his jaw line, which she described as "square-ish." (Lodgment No. 2 at 193, 213.)  Given the totality of the circumstances, the identification was reliable even if the confrontation procedure may have been unduly suggestive.  *See Neil*, 409 U.S. at 199.

Therefore the Court finds the Court of Appeal's decision is not contrary to, or an unreasonable application of clearly established Supreme Court law.  Accordingly, this Court RECOMMENDS that Petitioner's claim in ground four be DENIED.

### III. CONCLUSION AND RECOMMENDATION

The Court submits this Report and Recommendation to United States District Judge Larry Alan Burns under 28 U.S.C. § 636(b)(1) and Local Civil Rule 72.1(d) of the United States District Court for the Southern District of California.  For all the foregoing reasons, **IT IS HEREBY RECOMMENDED** that the habeas Petition be **DENIED** in its entirety on the ground the Petitioner's custody violates no federal right.

**IT IS FURTHER RECOMMENDED** the Court issue an Order (1) approving and adopting this Report and Recommendation and (2) directing that judgment be entered denying the Petition.

**IT IS HEREBY ORDERED** no later than <u>**September 26, 2014**</u>  any party to this action may file written objections with the Court and serve a copy on all parties.  The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** any Reply to the Objections shall be filed with the Court and served on all parties no later than ten (10) days from service of Petitioner's filed Objections.  The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's Order.  *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

**IT IS SO ORDERED.**

DATED:  August 26, 2014

DAVID H. BARTICK
United States Magistrate Judge

13cv2676-LAB (DHB)